No objections to this Report and Recommendation (the "R&R") have been received, and accordingly the Court reviews it for clear error. Finding no error, clear or otherwise, the R&R is adopted as the decision of the Court. The Clerk of Court is directed to enter judgment for Plaintiff in the amount of $986, 920.67. Plaintiff is also entitled to costs in the amount of $902.11 and post-judgment interest. Upon entry of judgment, the Clerk shall close the case.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

THE SECRETARY OF THE U.S. DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT, an
agency of the UNITED STATES OF AMERICA,

SO ORDERED.

*Cathy Seibel*    2/2/26
CATHY SEIBEL, U.S.D.J.

Plaintiff,

-against-

SHERMAN A. FRAY, a/k/a SHERMAN S.A.
FRAY, as Administrator C.T.A. of the Estate of
Stanley Fray, a/k/a Stanley A. Fray, deceased,

Defendant.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

24 Civ. 4588 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

Plaintiff, the Secretary of the U.S. Department of Housing and Urban Development ("HUD" or "Plaintiff"), filed this action on June 17, 2024, seeking to foreclose on a Home Equity Conversion Mortgage ("HECM"), also known as a reverse mortgage. (Docket No. 1). The mortgaged premises is 29 Woodland Place, White Plains, NY 10606 (the "Property"). (Docket No. 22-3 ¶ 15). On November 19, 2024, Plaintiff filed a motion for summary judgment. (Docket No. 22).[1] Defendant Sherman A. Fray, a/k/a Sherman S.A. Fray, as Administrator C.T.A. of the Estate of Stanley Fray, a/k/a Stanley A. Fray, deceased ("Defendant") did not oppose the motion. (Docket No. 28). On June 20, 2025, the Honorable Cathy Seibel granted summary judgment as to the foreclosure ("Opinion"), (Docket No. 29), and referred the matter to the undersigned "to compute the amount due to Plaintiff," (Docket No. 30). For the reasons set forth herein, I respectfully recommend that Plaintiff be awarded damages in the total amount of

---

[1] The Complaint also named John and Jane Does #1-5 and the New York State Department of Taxation and Finance as Defendants. (Docket No. 1). On HUD's request, these Defendants were dismissed on June 20 and 23, 2025. (Docket Nos. 29, 32).

$986,920.67, consisting of: (1) $537,169.40 in principal; (2) $389,311.49 in accrued interest; (3) $5,850 in service charges; and (4) $54,589.78 in mortgage insurance premiums ("MIP").

## I. BACKGROUND

The factual and procedural background is set forth in Judge Seibel's Opinion, and the Court assumes familiarity therewith. (*See* Docket No. 29).  Briefly, on or about April 13, 2009, Stanley A. Fray and Alvera Fray ("Borrowers") executed an adjustable-rate note ("Note"), (Docket No. 22-9 at 2-4),[2] and a HECM mortgage ("Mortgage"), (Docket No. 22-9 at 6-14), in the amount of up to $938,250, and secured by the Property.[3] (Docket No. 22-3 ¶ 13).  The Mortgage and Note were duly delivered and recorded. (*Id.*).  Through a series of valid assignments, the Mortgage was assigned to HUD. (*Id.* ¶¶ 19-21).  Alvera Fray died on April 23, 2019, and Stanley Fray died shortly thereafter on September 6, 2019. (Docket No. 22-8).  Pursuant to the Note, Plaintiff may require immediate payment in full of the Mortgage principal and accrued interest upon the death of a Borrower if the Property is not the principal residence of a surviving Borrower. (Note ¶ 7).  There are no surviving Borrowers, so Plaintiff declared the entire sum under the Note due and payable. (Docket No. 22-3 ¶¶ 24-29).

The Note was not paid, so Plaintiff commenced the instant action seeking to foreclose on the Note.  Judge Seibel granted Plaintiff the right to foreclose and appointed Michael P. Amodio to conduct the foreclosure sale for a fee of $750, to be deducted from the proceeds of the sale. (Docket No. 29 at 7-9).  However, Judge Seibel was unable to determine the validity of Plaintiff's requested damages based on the documents provided. (*Id.* at 10).  Therefore, Judge Seibel directed Plaintiff to submit a detailed calculation of all amounts due with supporting

---

[2] All page number citations herein refer to the page number assigned upon electronic filing unless otherwise noted.

[3] The same day, the Borrowers executed and delivered a second note and collateral mortgage to Plaintiff. (Docket No. 22-3 ¶ 16).

documentation, (*id.*), and referred the matter to the undersigned to prepare a Report and Recommendation detailing the amounts due to Plaintiff, (Docket No. 30).

On June 24, 2025, the undersigned directed Plaintiff to submit its motion for damages, including detailed calculations for all amounts due under the Note with supporting documentation. (Docket No. 33). Thereafter, Plaintiff filed an affidavit of William Collins, Director of the Single Family Asset Management, Servicing and Loss Mitigation Division of HUD, (Docket No. 34), which included a statement of account, (Docket No. 34-1), and loan transaction report, (Docket No. 34-2). Upon review, the undersigned determined that the submission did not provide the Court with a detailed calculation of all amounts due, and ordered Plaintiff to submit additional information and documentation for the Court to evaluate the damages requested. (Docket No. 40). On November 25, 2025, Plaintiff filed a supplemental affidavit of Chris Weeks, Supervisory Housing Specialist in the Office of Housing, Single Family Asset Management, Servicing and Loss Mitigation Division of HUD, (Docket No. 43), which included a list of relevant monthly interest rates and effective dates, (Docket No. 43-1).

Defendant does not oppose Plaintiff's motion for damages. (Docket No. 39).

## II. LEGAL STANDARDS

The Court has "wide discretion" in conducting a damages inquiry. *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F. Supp. 2d 126, 129 (S.D.N.Y. 2003). "Damages must be determined with reasonable certainty." *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, 20-CV-5309 (JGK)(VF), 2023 WL 9603893, at *2 (S.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024).[4] "Any

---

[4] If the *pro se* Defendant does not have access to cases cited herein that are available only by electronic database, he may request copies from Plaintiff's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel must provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the court and were not previously cited by any party.").

determination of damages in an action for foreclosure and sale 'should be determined under the terms of the Notes and Mortgages, the governing instruments here.'" *E. Sav. Bank, FSB v. Rabito*, No. CV 11–2501 (KAM)(VVP), 2014 WL 4804872, at *1 (E.D.N.Y. Sept. 10, 2014) (quoting *Builders Bank v. Rockaway Equities, LLC*, No. CV 2008–3575 (MDG), 2011 WL 4458851, at *5 (E.D.N.Y. Sept.23, 2011)), *report and recommendation adopted*, 2014 WL 4804901 (E.D.N.Y. Sept. 26, 2014).  "If those elements are established, the mortgagee has a 'presumptive right to collect, which can only be overcome by an affirmative showing from the defendant.'" *United States v. Fugle*, No. 00–CV–0540E (SR), 2003 WL 251948, at *2 (W.D.N.Y. Jan. 25, 2003) (quoting *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)).

The inquiry may be conducted "based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Sabatino v. Emeana*, CV-97-7637 (SMG), 2000 WL 34017111, at *2 (E.D.N.Y. Aug. 1, 2000).  "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Cap. Inc. v. Bohai Pharms. Grp. Inc.*, 15 Civ. 4410 (VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm. v. Berman*, 15-CV-5983 (LAK)(JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016)).

The affidavits and other documentary evidence submitted by HUD in the instant action provide a sufficient basis from which the Court can reasonably ascertain damages and, therefore, no hearing is required. *See Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Kings Cnty. Pub. Adm'r*, No. 22-CV-07925 (FB)(RER), 2023 WL 7169000, at *4 (E.D.N.Y. Sept. 13, 2023), *report and*

*recommendation adopted*, 2023 WL 7167515 (E.D.N.Y. Oct. 31, 2023); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Nassau Cnty. Pub.*, 19-cv-03547 (DLI)(SJB), 2023 WL 2421676, at *5 (E.D.N.Y. Feb. 9, 2023); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Robedee*, 22-cv-00809 (FB)(JMW), 2022 WL 18284844, at *6 (E.D.N.Y. Dec. 5, 2022), *report and recommendation adopted*, 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022).

## III. DISCUSSION

Plaintiff seeks damages in the total amount of $991,380.77, consisting of: (1) $537,482.90 in unpaid mortgage principal; (2) $393,458.09 in accrued interest; (3) $5,850 in service charges; and (4) $54,589.78 in MIP.[5] (Docket No. 34 ¶ 3).  In support of this request, Plaintiff relies on the supporting documentation submitted with its motion for summary judgment, (Docket No. 22), Mr. Collins's supplemental affidavit and accompanying exhibits, (Docket No. 34), and Mr. Weeks's supplemental affidavit and accompanying exhibits, (Docket No. 43).

## A. Principal

The terms of the Note establish that the Borrowers "promise[d] to pay . . . a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest." (Note ¶ 2).  The Mortgage terms permit a principal of up to a maximum of $938,250. (Mortgage at 6).  The Borrowers did not receive the maximum amount of $938,250.  Instead, the initial advance was in the amount of $358,812.29, as set forth in the loan transaction report. (Docket No. 34-2 at 14).  The Borrowers subsequently received numerous additional distributions, adding to the principal due, on the following dates and amounts:

---

[5] Judge Seibel previously granted Plaintiff's request for costs in the amount of $902.11 and post-judgment interest. (Docket No. 29 at 14, 16).

| Description | Transaction Date | Amount Toward Principal |
|---|---|---|
| Initial Advance | April 23, 2009 | $358,812.29 |
| Distribution | September 28, 2009 | $5,000 |
| Distribution | May 17, 2010 | $5,000 |
| Distribution | October 22, 2010 | $3,000 |
| Distribution | January 12, 2011 | $5,000 |
| Distribution | April 26, 2011 | $3,000 |
| Distribution | June 15, 2011 | $6,000 |
| Distribution | July 27, 2011 | $3,000 |
| Distribution | August 18, 2011 | $2,000 |
| Distribution | September 26, 2011 | $2,000 |
| Distribution | December 28, 2011 | $5,000 |
| Distribution | February 24, 2012 | $4,000 |
| Distribution | April 23, 2012 | $4,000 |
| Distribution | July 11, 2012 | $5,000 |
| Distribution | August 2, 2012 | $2,000 |
| Distribution | August 29, 2012 | $1,000 |
| Distribution | October 30, 2012 | $1,500 |
| Distribution | November 28, 2012 | $2,000 |
| Distribution | January 16, 2013 | $5,000 |
| Distribution | February 14, 2013 | $2,000 |
| Distribution | February 28, 2013 | $2,000 |
| Distribution | April 9, 2013 | $2,000 |
| Distribution | May 2, 2013 | $1,000 |
| Distribution | May 24, 2013 | $1,000 |
| Distribution | June 25, 2013 | $1,000 |
| Distribution | July 19, 2013 | $2,000 |
| Distribution | August 14, 2013 | $1,000 |
| Distribution | September 20, 2013 | $2,000 |
| Distribution | October 22, 2013 | $1,000 |
| Distribution | December 20, 2013 | $1,500 |
| Distribution | January 17, 2014 | $1,500 |
| Distribution | August 26, 2014 | $1,000 |
| Distribution | January 29, 2015 | $1,700 |
| Distribution | May 28, 2015 | $1,000 |

| Distribution | July 24, 2015 | $1,000 |
| Distribution | September 25, 2015 | $1,000 |
| Distribution | January 27, 2016 | $1,400 |
| Distribution | June 22, 2016 | $1,000 |
| Distribution | July 22, 2016 | $1,000 |
| Distribution | August 17, 2016 | $1,000 |
| Distribution | October 14, 2016 | $1,000 |
| Distribution | January 26, 2017 | $1,000 |
| Distribution | July 26, 2017 | $1,000 |
| **Total:** | | **$453,412.29** |

(Docket No. 34-2 at 2-14).

Therefore, at the time of their deaths in 2019, the Borrowers had received distributions in the amount of $453,412.29. (Docket No. 34-2).

After the Borrowers' deaths, HUD began collecting additional fees and charges under the Mortgage, which allows HUD to "collect fees and charges authorized by the Secretary." (Mortgage ¶ 8).  Pursuant to 24 C.F.R. § 206.207(a), HUD "may collect reasonable and customary charges and fees from the borrower . . . by adding them to the outstanding loan balance."  The permissible charges and fees include: "[r]easonable costs for performing property inspections," 24 C.F.R. § 206.129(d)(3)(vi); "payment of property taxes," 24 C.F.R. § 206.207(a)(2)(ii); "[p]roperty preservation expenses," 24 C.F.R. § 206.207(a)(1)(v); and "[a]ttorney's and trustee's fees and expenses actually incurred (including the cost of appraisals and cost of advertising) when a case has been referred for foreclosure," 24 C.F.R. § 206.207(a)(1)(ii).  These additional charges were added to the principal due, on the following dates and amounts:

| Description | Transaction Date | Amount Toward Principal |
| --- | --- | --- |
| Inspection | March 9, 2020 | $22 |
| Inspection | May 1, 2020 | $22 |

| Inspection | August 27, 2020 | $22 |
|---|---|---|
| Inspection | September 15, 2020 | $22 |
| Inspection | September 29, 2020 | $22 |
| Inspection | October 26, 2020 | $22 |
| Inspection | November 12, 2020 | $66 |
| Inspection | December 21, 2020 | $22 |
| Inspection | February 9, 2021 | $22 |
| Inspection | March 5, 2021 | $22 |
| Inspection | March 22, 2021 | $22 |
| Taxes | April 12, 2021 | $15,101.14 |
| Preservation | April 12, 2021 | $458.31 |
| Inspection | April 22, 2021 | $22 |
| Attorney Fee | April 28, 2021 | $313.50 |
| Inspection | June 10, 2021 | $22 |
| Inspection | July 12, 2021 | $22 |
| Inspection | July 21, 2021 | $22 |
| Taxes | July 23, 2021 | $11,878.60 |
| Inspection | August 13, 2021 | $22 |
| Inspection | September 17, 2021 | $22 |
| Inspection | October 15, 2021 | $22 |
| Inspection | December 27, 2021 | $22 |
| Inspection | March 23, 2022 | $88 |
| Taxes | April 13, 2022 | $2,024.04 |
| Inspection | June 21, 2022 | $44 |
| Inspection | July 20, 2022 | $22 |
| Taxes | July 26, 2022 | $9,939.79 |
| Inspection | August 24, 2022 | $110 |
| Inspection | January 26, 2023 | $22 |
| Inspection | March 27, 2023 | $26 |
| Taxes | April 12, 2023 | $1,986.83 |
| Inspection | June 14, 2023 | $26 |
| Inspection | June 14, 2023 | $26 |
| Taxes | August 8, 2023 | $10,733.58 |
| Inspection | August 31, 2023 | $26 |
| Inspection | August 31, 2023 | $26 |

| Inspection | August 31, 2023 | $26 |
|---|---|---|
| Inspection | October 6, 2023 | $26 |
| Inspection | November 7, 2023 | $26 |
| Inspection | November 29, 2023 | $26 |
| Inspection | January 11, 2024 | $26 |
| Taxes | January 22, 2024 | $5,175.87 |
| Appraisals | April 11, 2024 | $600 |
| Taxes | April 19, 2024 | $1,991.76 |
| Taxes | July 22, 2024 | $6,368.74 |
| Taxes | October 9, 2024 | $2,538.64 |
| Inspection | November 6, 2024 | $30 |
| Inspection | December 6, 2024 | $30 |
| Inspection | January 8, 2025 | $30 |
| Inspection | February 7, 2025 | $30 |
| Taxes | February 13, 2025 | $6,368.73 |
| Write-Off | March 7, 2025 | ($30) |
| Inspection | March 10, 2025 | $30 |
| Taxes | April 26, 2025 | $1,985.69 |
| Taxes | July 22, 2025 | $5,477.39 |
| **Total:** | | **$84,070.61** |

(Docket No. 34-2 at 2-14).

In total, as of July 23, 2025, the remaining principal owed on the Mortgage was $537,482.90, which is the sum of the outstanding principal ($453,412.29) and the allowed charges and fees ($84,070.61). (Docket No. 34).  No amounts toward the principal were ever paid by or on behalf of the Borrowers during the life of the Note. (Docket No. 43 ¶ 5).

Mr. Collins affirmed that the loan transaction report, (Docket No. 34-2), was maintained in the regular course of business, and that Plaintiff was not seeking attorney's fees as part of its request for damages. (Docket No. 34 ¶¶ 1, 15).  However, the loan transaction report reflects that on April 28, 2021, $313.50 was added to the principal balance, using the description "Attorney Fee." (Docket No. 34-2 at 6).  Although governing regulations permit the recovery of attorney's

fees in HECM foreclosure proceedings, *see* 24 C.F.R. § 206.207(a)(1)(ii), Plaintiff has not provided sufficient information regarding this fee request, *see Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) ("all applications for attorney's fees be supported by contemporaneous records"), or included any authority to honor such a request absent such supporting documentation.[6]

Accordingly, I respectfully recommend awarding Plaintiff $537,169.40, the requested unpaid principal amount due, as established in the loan transaction report, less the $313.50 "Attorney Fee" entry.

## B. Accrued Interest

The terms of the Note establish that "[i]nterest will be charged on the unpaid principal at the rate of [2.728%] per year until the full amount of principal has been paid.  The interest rate may change in accordance with Paragraph 5 of this Note." (Note ¶ 2).  Paragraph 5 sets forth that "[t]he interest rate may change on the first day of July 2009, and on . . . the first day of each succeeding month." (*Id.* ¶ 5).  Here, the interest rate was determined monthly by adding 2.250% to the most recent calculation of the "average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market," based on an index published in the *Wall Street Journal*, and could never exceed 12.728%. (*Id.*).

The loan transaction report documents the interest that was added to the loan balance each month. (Docket No. 34-2).  Plaintiff provided the interest rates it applied under the Note, as well as their respective effective dates, from the date HUD began servicing the account, to the

---

[6] Plaintiff, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1078 (SAS), 2014 WL 1492481, at *1 (S.D.N.Y. Apr. 16, 2014) (citation and internal quotation marks omitted).  Plaintiff is required to support its request for attorney's fees with "contemporaneous time records that '[specify], for each attorney, the date, the hours expended, and the nature of the work done.'" *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 739 (S.D.N.Y. 2018) (quoting *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014)).

present. (Docket No. 43-1).  The interest rate during this period fluctuated between 2.34% and 7.711%, never surpassing the 12.728% cap under the Note. (*Id.*).  Plaintiff has not supplied the effective interest rates prior to September 2012.  However, the Court's review of the loan transaction report demonstrates that the interest rate used prior to September 2012 did not exceed the 12.728% maximum allowed under the Note.[7] (Docket No. 34-2).

The loan transaction report indicates that the total interest accrued is $389,311.49. (*Id.* at 14).  However, Plaintiff is requesting an award of $393,458.09 in accrued interest, (Docket No. 34 ¶ 3), which is the same as the amount listed in the statement of account, (Docket No. 34-1). The loan transaction report and the statement of account both appear to have been generated on July 23, 2025, but Plaintiff has not provided any information or explanation regarding the discrepancy.  Without additional support for the requested amount, the Court relies on the figure supported by the data provided in the loan transaction report. (Docket No. 34-2).

Accordingly, I respectfully recommend awarding Plaintiff the interest accrued on the balance of the loan in the amount of $389,311.49.

## C.  Service Charges

HUD is authorized to "collect a fixed monthly charge for servicing activities of the mortgagee or servicer" under 24 C.F.R. § 206.207(b).  Here, the monthly servicing fee was $30 per month throughout the lifetime of the Mortgage. (Docket No. 22-3 ¶ 32).  Plaintiff is requesting $5,850 in servicing fees. (Docket No. 34 ¶ 3).

Judge Seibel already found that as of November 2024, the Borrowers owed $5,640 in servicing fees, calculated at $30 per month for the 188 months between April 2009 and

---

[7] The Court checked the annual interest rates used by dividing the amount of interest accrued for a given month by the loan balance as of the last day of the previous month and multiplying by 12. (Docket No. 34-2).

November 2024, "so long as Plaintiff provides documentation showing that no portion of the servicing fee was paid during the life of the Borrowers." (Docket No. 29 at 12-13).

Mr. Weeks affirmed in his supplemental affidavit that the Borrowers did not make any payments toward the service charges during the life of the Note. (Docket No. 43 ¶ 5).  The loan transaction report also demonstrates that the total owed in servicing fees is $5,850,[8] and no payments were made prior to July 23, 2025. (Docket No. 34-2).  Accordingly, I respectfully recommend awarding Plaintiff $5,850 for service charges.

**D. MIP**

HUD is also authorized to collect "an initial MIP that does not exceed three percent of the maximum claim amount." 24 C.F.R. § 206.105(a).  Thereafter, a monthly MIP can be added to the accruing loan balance. *See* 24 C.F.R. § 206.105(b).  Here, the initial MIP was $12,510, and the monthly MIP was calculated at a rate of .500% of the balance of the loan for that month. (Docket No. 22-3 ¶ 33).  The loan transaction report documents the initial MIP, as well as the monthly MIP amounts. (Docket No. 34-2).

Plaintiff requests $54,589.78 in MIP. (Docket No. 34 ¶ 3).  This amount is supported by the loan transaction report, (Docket No. 34-2), and the statement of account, (Docket No. 34-1). Accordingly, I respectfully recommend awarding Plaintiff $54,589.78 for MIP.

**E.  Prejudgment Interest**

Plaintiff stated that it is "acceptable . . . to have no prejudgment interest." (Docket No. 43 ¶ 3).  As Plaintiff is no longer pursuing prejudgment interest and has failed to supply the Court with the requested information needed to calculate prejudgment interest, (Docket No. 40 at 2),

---

[8] The current amount requested, $5,850, is $210 more than the $5,640 calculated by Judge Seibel. (Docket No. 29 at 13).  The Court construes this additional request to represent $30 per month for the seven months that elapsed between November 2024, when the motion for summary judgment was filed, and July 2025, when the supplemental documentation supporting the damages request was submitted.

the Court considers the request for prejudgment interest withdrawn. *See Linza v. Outsource Receivables Mgmt., Inc.*, Case No. 1:17-cv-1324, 2021 WL 2209408, at *7 (W.D.N.Y. Feb. 4, 2021) ("a party may waive its right to prejudgment interest"); *In re NIU Holdings LLC*, 624 B.R. 22, 42 (Bankr. S.D.N.Y. 2020) ("a party may waive a right to statutory prejudgment interest but, to be valid, such waiver must be 'clear and express,'" (quoting *Katzman v. Helen of Troy Texas Corp.*, No. 12 Civ. 4220 (PAE), 2013 WL 1496952, at *6 (S.D.N.Y. Apr. 11, 2013))). Accordingly, the Court does not recommend awarding prejudgment interest since Plaintiff has clearly waived its right to it.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend awarding Plaintiff damages in the total amount of $986,920.67, consisting of: (1) $537,169.40 in principal; (2) $389,311.49 in accrued interest; (3) $5,850 in service charges; and (4) $54,589.78 in MIP.  Plaintiff is also entitled to costs and post-judgment interest as set forth in Judge Seibel's Opinion.

The Clerk of Court is respectfully requested to mail a copy of this Report and Recommendation to the *pro se* Defendant.

## V.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for computing time).  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy

Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:    January 5, 2026
            White Plains, New York

RESPECTFULLY SUBMITTED:

_____
JUDITH C. McCARTHY
United States Magistrate Judge